IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**ERIC B. SAUB,**

    Plaintiff,

v.                                                                         Civil Action No. **3:17CV617**

**WESTERN TIDEWATER REGIONAL JAIL,** *et al.*,

    Defendants.

## MEMORANDUM OPINION

Eric B. Saub, a Virginia inmate proceeding *pro se* and *in forma pauperis*, filed this 42 U.S.C. § 1983 action.[1] The matter is proceeding on Saub's Particularized Complaint. (ECF No. 39.) By Memorandum Order entered on January 13, 2020, the Court dismissed a number of Saub's claims because they failed to comply with the joinder requirement.[2] The following claims remain before the Court:

| | |
|---|---|
| Claim One: | Upon transfer to a Virginia Department of Correction ("VDOC") facility, Saub expects that Superintendent Smith will deprive him of his "legal material at transport," which will result in the following constitutional violations: (a) "right to access the courts; [(b)] unlawful seizure; [and,] due process violations; (4th, 5th, 6th, and 14th Amendments)." (Part. Compl. 4, 24.) |

---

[1] The statute provides, in pertinent part:

> Every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.

[2] The remaining defendants are all employees of the Western Tidewater Regional Jail ("WTRJ"). The Court employs the pagination assigned by CM/ECF docketing system. The Court corrects the spelling, punctuation, and capitalization in the quotations to the parties' submissions.

| | |
|---|---|
| Claim Two: | Deputy Superintendent Bower, Lieutenant Perry, Sergeant Jones, and Superintendent Smith deprived Saub of "personal and legal property" when "[he] was moved to disciplinary segregation," "while every other inmate in disciplinary segregation was able to retain all of their personal and legal property," (*id.* at 5), which resulted in the following constitutional violations: (a) "unlawful seizure (4th Amendment); [(b)] seizure of documents and books (1st Amendment); [and,] [(c)] due process and [(d)] equal protection (5th and 14th Amendments)." (*Id.* at 24–25.) |
| Claim Nine: | Superintendent Smith is "liable for the customs and policies of WTRJ," which resulted in a "failure to protect [Saub's] personal and legal property" in violation of the "4th Amendment" when Saub was not permitted "to be segregated from the normal inmate population as suggested by [his] previous attorneys to protect [his] numerous legal documents." (*Id.* at 13, 27.) |
| Claim Ten: | Superintendent Smith is liable for "WTRJ's policies and customs" that led to the "eras[ing] [of] [Saub's] electronic discovery," which resulted in the following constitutional violations: "4th Amendment seized documents; [and,] due process (5th & 14th Amendments)." (*Id.* at 14, 27.) |

Superintendent Smith, Deputy Superintendent Bower, Lieutenant Perry, and Sergeant Jones ("Defendants") moved for summary judgment on October 2, 2020.[3] Despite the provision of multiple, generous extensions of time, Saub has failed to file a response. Instead, on May 7, 2021, Saub moved for another extension of time. (ECF No. 64.)

In support of his motion for extension of time, Saub notes, *inter alia*, that: because of Covid-19 restrictions he has not been able to go to the prison law library since March 4, 2020; prison officials have ignored his requests for copies of specific cases from the law library; and, he does not know how to proceed. While the Court is sympathetic to Saub's circumstances, the matter cannot be allowed to languish on the docket indefinitely. Moreover, review of the remaining claims before the Court reflects that, to the extent evidence may exist to support these claims, Saub

---

[3] Defendants filed a combined Motion to Dismiss and Motion for Summary Judgment. (ECF No. 52.) The Court treats the motion as one for summary judgment.

2

could provide it by providing a simple sworn statement. The absence of adequate evidence to support the claims does not flow from Saub's current conditions of confinement, but, as discussed below, because the claims themselves lack any legal merit. Therefore, Saub's Motion to Continue (ECF No. 64) will be DENIED.

For the reasons set forth below, the Motion for Summary Judgment (ECF No. 52) will be GRANTED.

### I. STANDARD FOR SUMMARY JUDGMENT

Summary judgment must be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the responsibility of informing the Court of the basis for the motion and identifying the parts of the record which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotation marks omitted). When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting former Fed. R. Civ. P. 56(c), (e) (1986)).

In reviewing a summary judgment motion, the Court "must draw all justifiable inferences in favor of the nonmoving party." *United States v. Carolina Transformer Co.*, 978 F.2d 832, 835 (4th Cir. 1992) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). A mere "*scintilla* of evidence," however, will not preclude summary judgment. *Anderson*, 477 U.S. at 251

(quoting *Improvement Co. v. Munson*, 81 U.S. (14 Wall.) 442, 448 (1872)). "[T]here is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party . . . upon whom the onus of proof is imposed." *Id.* (quoting *Munson*, 81 U.S. at 448). Additionally, "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n.7 (5th Cir. 1992)); *see* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials . . . .").

In support of their Motion for Summary Judgment, Defendants submitted: the affidavit of Superintendent Smith (ECF No. 54-1); the affidavit of Deputy Superintendent Bower (ECF No. 54-2); the affidavit of Sergeant Jones (ECF No. 54-3); the affidavit of Lieutenant Perry (ECF No. 54-4); and copies of various institutional records from the Western Tidewater Regional Jail ("WTRJ") (ECF Nos. 54-5 through 54-9).

Although Saub did not respond to the Motion for Summary Judgment, his Particularized Complaint is sworn to under penalty of perjury. (ECF No. 39, at 2.) Nevertheless, the facts offered by a sworn declaration must also be in the form of admissible evidence. *See* Fed. R. Civ. P. 56(c)(4). In this regard, the statement in the sworn declaration "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." *Id.* Therefore, "summary judgment affidavits cannot be conclusory or based upon hearsay." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996) (internal citations omitted). For example, Saub swears that "every other inmate in disciplinary segregation was able to retain all of their personal and legal property."

(ECF No. 39, ¶ 18.) Saub fails to demonstrate that he is competent to testify as to what personal property other inmates in disciplinary segregation retained.

## II. SUMMARY OF RELEVANT FACTS

### A. Saub

Saub was an inmate at WTRJ from July 5, 2016 until July 11, 2018, when he was released into the custody of the VDOC. (ECF No. 54-4 ¶ 3.) On or about July 10, 2018, Saub was convicted in the Circuit Court for the County for the Isle of Wight of second-degree murder and use of a firearm and sentenced to thirty-three years of imprisonment. (ECF Nos. 54-6, 7–11.) As of the time of his drafting of the Particularized Complaint in June of 2018, Saub represented himself on the above criminal charges, as well as on criminal charges in Oregon. (ECF No. 39 ¶ 3.) Additionally, Saub was litigating a number of unidentified civil actions. (*Id.*) Saub feared that when he was transported from the WTRJ to the VDOC, he would be forced "to throw away all property including legal material or have it picked up by friends or family." (*Id.* ¶ 5.)[4] At that time, Saub did "not have anyone who [was] able to pick up [his] legal material from WTRJ" or mail it to the VDOC. (*Id.* ¶¶ 7, 8.)

### B. General Personal Property Restrictions at WTRJ

Inmates at WTRJ

> are permitted to have personal paper materials, including legal materials, in their cell. If paper material accumulates to an amount determined by supervisors to be a fire or medical hazard, the material will be confiscated and placed in the inmate's property. Inmate property, whether kept in the cell or confiscated, is returned to the inmate upon their release from WTRJ. If the inmate is sent to another institution, only those approved personal items will be forwarded to him/her.
> The Department of Corrections Operating Procedures state that they will only accept "reasonable quantities of mail and legal materials." VDOC Op.Pro. 802.1. In [Superintendent Smith's] experience, the VDOC does not accept more than a manila envelope of legal materials. Inmates whose personal property

---

[4] The family member or friend could then mail the material to the inmate in the VDOC. (ECF No. 39 ¶ 6.)

5

exceeds that which will be accepted by the VDOC or other receiving facility, have the option of releasing their property to their counsel, family, or other representative.

(ECF No. 54-1 ¶¶ 5–8 (some paragraph spacing omitted) (some quotation marks omitted).)

### C. The Disposition of Saub's Personal Property upon His Transfer to VDOC

"Saub's personal property included several boxes of legal materials, CDs and flash drives, weighing over 50 lbs." (*Id.* ¶ 9.) In July of 2018, "Saub was informed that he would be transferred from WTRJ facility and that his excess personal property would not be accepted by the receiving facility. Inmate Saub was informed that he could release his excess property to his attorney, family, or personal representative." (*Id.* ¶ 10.) In response, "Saub requested that his property, including 1 bag of personal items, 9 bags of legal items, 4 CDs, and 5 flash drives, be released to Mark Dionne of Eagle Security Solutions. On August 24, 2018, an employee of Eagle Security Solutions picked up Inmate Saub's personal property, as he requested." (*Id.* ¶¶ 11, 12.)[5]

### D. Temporary Deprivation of Personal Property while in Isolation

On April 20, 2017, Deputy Superintendent Bower informed "Saub that he was being moved to another cell and needed to pack up his belongings. Inmate Saub became belligerent, cursing at [Deputy Superintendent Bower], Sgt. Jones, and Lt. Perry. [They] were forced to place the housing unit on lockdown, telling the inmates to step into their cells while [they] dealt with Inmate Saub's outburst." (ECF No. 54-2, ¶ 7.) "Saub was written up on major and minor rule violations as a result of his outburst." (*Id.* ¶ 10.)

Saub was escorted to a holding cell, and then placed in unit A4 in punitive isolation. (*Id.* ¶¶ 8–9.) Saub's "personal property was collected and placed in the property room. Inmates in punitive isolation are permitted to have a religious text, legal pads and pens, and necessary hygiene

---

[5] As noted previously, Saub was transferred to the VDOC on July 11, 2018.

items. The remaining personal property is returned after the disciplinary action has concluded." (*Id.* ¶ 9.)

On April 21, 2017, a hearing was held on the charges stemming from Saub's outburst. (*Id.* ¶ 10.) Saub "was found guilty of most of the charges. Inmate Saub was disciplined with 10 days of cell restriction." (*Id.*) According to Deputy Superintendent Bower, upon Saub's "release from punitive isolation, all of Inmate Saub's personal property was returned to him." (*Id.* ¶ 11.) Saub contends that although he received some of his property back, as of June 5, 2018, he had not received some legal texts, dental floss, some playing cards, and a few other items. (ECF No. 39 ¶¶ 26–29.)

### E. Saub's Loss of Property

While Saub was away from his cell, he had no way to secure his personal property. (*Id.* ¶ 80.) On at least two occasions, while Saub was in court, legal material went missing from Saub's cell. (*Id.* ¶ 82.)

On March 30, 2017, Saub received a flash drive containing discovery relating to his then-pending criminal charges in the Isle of Wight County. (*Id.* ¶ 84.) The flash drive was stored in the Watch Commander's Office at the WTRJ. (*Id.* ¶ 85.) In June or July of 2017, Saub went to view the information on the flash drive only to discover that all of the information on the flash drive had been erased. (*Id.* ¶ 86.)

"WTRJ does not have a policy or procedure of erasing flash drives or disposing of any other type of legal materials that are the personal property of inmates. WTRJ does not have a

7

policy or procedure of encouraging inmates to steal the personal property of other[] [inmates]." (ECF No. 54-1 ¶¶ 14–15.)

### III. ANALYSIS

#### A.   Access to the Courts—Claim One (a)

Prisoners have a right to meaningful access to the courts. *Bounds v. Smith*, 430 U.S. 817, 822 (1977). In order to plead a backward-looking denial of access to the courts claim, a plaintiff must identify with specificity a non-frivolous legal claim that he was prevented from litigating by the defendants' actions.[6] *Christopher v. Harbury*, 536 U.S. 403, 415 (2002); *Lewis v. Casey*, 518 U.S. 343, 351–53 & n.3 (1996). Although Saub generally identifies the nature of the underlying legal matters, he fails to demonstrate any injury to his litigation that was caused by Superintendent Smith's policies regarding transferring prisoner personal property from the WTRJ to the VDOC. Indeed, the record reflects that Saub was able to transfer his personal property to a third-party after his transfer from WTRJ. Accordingly, Saub's claim of denial of access to the courts in Claim One (a) will be DISMISSED.

#### B.   Alleged Unlawful Seizure and Denial of Due Process—Claim One (b)

In Claim One (b), Saub contends that it would have amounted to an unlawful seizure and a violation of due process if WTRJ discarded all of his excess property upon his transfer to the VDOC. The WTRJ, however, did not discard Saub's excess property. Rather, the WTRJ transferred custody of his excess personal property to Saub's designee. Therefore, as a factual

---

[6] In Claim One, Saub challenged the potential impact upon his access to his legal materials when he was transferred to the VDOC. Saub now has been transferred to the VDOC. Thus, it is proper to characterize his access to the courts claim as a backward-looking claim.

matter, Claim One (b) lacks merit and may be dismissed. Moreover, this claim lacks legal merit for the reasons set forth below.

Saub contends that requiring him to dispose of his excess property constitutes an unlawful seizure in violation of the Fourth Amendment. It is well established that,

> society is not prepared to recognize as legitimate any subjective expectation of privacy that a prisoner might have in his prison cell and that, accordingly, the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell. The recognition of privacy rights for prisoners in their individual cells simply cannot be reconciled with the concept of incarceration and the needs and objectives of penal institutions.

*Hudson v. Palmer*, 468 U.S. 517, 526 (1984). Therefore, the courts have rejected the notion that an institutional policy that permits institutions to review and prohibit the retention of material deemed contraband constitutes an unlawful seizure. *Littler v. Wallace*, 803 F. App'x 15, 20 (7th Cir. 2020) (citing *Hudson*, 468 U.S. at 525–27; *United States v. Whalen*, 940 F.2d 1027, 1034–35 (7th Cir. 1991)).

In another portion of Claim One (b), Saub contends that requiring him to dispose of his excess personal property amounts to a denial of property without due process of law. First, Saub fails to demonstrate that he enjoys a protected property interest in personally possessing more than fifty pounds of personal property. *See Wenzler v. Warden of G.R.C.C.*, 949 F. Supp. 399, 402 (E.D. Va. 1996) (observing that because "a Virginia inmate's entitlement to possess personal property is always subject to the absolute discretion of the Director, [plaintiff] cannot establish a possessory interest in his typewriter which is protected by the Due Process Clause." (citing *Escobar v. Landwehr*, 837 F. Supp. 284, 288 (W.D. 1993); *Rosson v. Weatherholtz*, 405 F. Supp. 48, 50 (W.D. Va. 1975))). Second, Virginia's provision of adequate post-deprivation remedies forecloses Saub's due process claim for the deprivation of property. *See Hudson*, 468 U.S. at 533; *Wilson v. Miller*, No. 7:19CV00414, 2020 WL 3441238, at *4 (W.D. Va. June 23, 2020)

(describing the provision of remedies available in Virginia against employees of regional jails). Accordingly, Claim One (b) will be DISMISSED.

"[A]s a general rule, a prisoner's transfer or release from a particular prison moots his claims for injunctive and declaratory relief with respect to his incarceration there." *Rendelman v. Rouse*, 569 F.3d 182, 186 (4th Cir. 2009) (citing *Incumaa v. Ozmint*, 507 F.3d 281, 286–87 (4th Cir. 2007); *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991); *Taylor v. Rogers*, 781 F.2d 1047, 1048 n.1 (4th Cir. 1986)). Saub has been moved from WTRJ and is no longer subject to any restrictions on his personal property from that institution. Accordingly, Saub's claims for injunctive and declaratory relief in conjunction with Claim One (a) and One (b) will be DISMISSED.

### C. Claim Two

In Claim Two (a), Saub contends that the deprivation of his personal property while he was confined in punitive segregation amounts an unlawful seizure in violation of the Fourth Amendment. This claim lacks merit for the reasons discussed above in conjunction Claim One (b). *See Crozier v. Endel*, 447 F. App'x 861, 862 (9th Cir. 2011) (observing that the "district court properly dismissed [inmate's] claim for unlawful seizure of property because there is no Fourth Amendment right to be free from searches and seizures [of property] in prison." (citing *Seaton v. Mayberg*, 610 F.3d 530, 534 (9th Cir. 2010); *Barnett v. Centoni*, 31 F.3d 813, 816 (9th Cir. 1994))). Accordingly, Claim Two (a) will be DISMISSED.

In Claim Two (b), Saub asserts that the deprivation of his property while in punitive isolation violated his First Amendment right of access to the courts. Saub, however, fails to demonstrate an actual injury to any litigation because of this temporary deprivation of property. *Lewis*, 518 U.S. at 351–53 & n.3. Accordingly, Claim Two (b) will be DISMISSED.

In Claim Two (c), Saub contends that after he was released from punitive segregation not all of his property was returned to him. Saub contends that this action amounts to a violation of due process. As explained above, this sort of due process claim for the deprivation of property is foreclosed by Virginia's provision of adequate post-deprivation remedies. *See Hudson*, 468 U.S. at 533; *Wilson*, 2020 WL 3441238, at *4. Accordingly, Claim Two (c) will be DISMISSED.

In Claim Two (d), Saub asserts that he was denied equal protection because other inmates were able to retain their personal property when placed in punitive segregation, while he was not able to retain all of his personal property. The Equal Protection Clause of the Fourteenth Amendment commands that similarly situated persons be treated alike. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (citing *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). To survive summary judgment, a plaintiff must demonstrate: (1) "that he has been treated differently from others with whom he is similarly situated," and (2) that the differing treatment resulted from intentional discrimination. *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001). In so doing, the plaintiff must set forth "specific, non-conclusory factual [evidence] that establish[es] improper motive." *Trulock v. Freeh*, 275 F.3d 391, 405 (4th Cir. 2001) (quoting *Crawford–El v. Britton*, 523 U.S. 574, 598 (1998)).

Saub fails to demonstrate that he was treated differently than other inmates to whom he was similarly situated. Defendants swear that all inmates in punitive segregation have extremely limited access to personal property. Specifically, per WTRJ policy, inmates in punitive isolation are only permitted to have a religious text, legal pads and pens, and necessary hygiene items. (ECF No. 54-2 ¶ 9.) Without providing any details as to names or particular items, Saub contends he was "deprived of [his] personal and legal property while every other inmate in disciplinary segregation was able to retain all of their personal and legal property." (ECF No. 39 ¶ 18.) Saub's "[a]iry

generalities [and] conclusory assertions" are insufficient "to stave off summary judgment." *McManus v. Wilson*, No. 3:13CV460–HEH, 2015 WL 3444864. at *6 (E.D. Va. May 28, 2015) (alterations in original) (quoting *United States v. Roane*, 378 F.3d 382, 400–01 (4th Cir. 2004)). Accordingly, Claim Two (d) will be DISMISSED.

### D. Claims Nine and Ten

In Claim Nine, Saub contends that Superintendent Smith is "liable for the customs and policies of WTRJ," which resulted in a "failure to protect [Saub's] personal and legal property" in violation of the "4th Amendment" when Saub was not permitted "to be segregated from the normal inmate population as suggested by [his] previous attorneys to protect [his] numerous legal documents." (ECF No. 39, at 13, 27.) First, Saub fails to articulate how any action taken by Superintendent Smith violated Saub's Fourth Amendment rights. *See Crozier*, 447 F. App'x at 862 (citation omitted). Second, Saub fails to demonstrate that he had any constitutional right to be segregated or housed in a particular part of the WTRJ. Lastly, Virginia's provision of an adequate post-deprivation remedies forecloses any due process claim from the failure to protect his property. Accordingly, Claim Nine will be DISMISSED.

In Claim Ten, Saub contends that Superintendent Smith is liable for the policies and procedures of WTRJ that led to the erasure of the material on Suab's thumb drive. The record reflects that WTRJ does not have a policy or procedure of erasing thumb drives that belong to inmates. Moreover, Saub fails to submit any evidence that indicates that Superintendent Smith was involved in any manner in the circumstances that led to the erasure of the material on Saub's thumb drive. Accordingly, Claim Ten will be DISMISSED.

## IV. Conclusion

Saub's Motion to Continue (ECF No. 64) will be DENIED. The Motion for Summary Judgment (ECF No. 52) will be GRANTED. The action will be DISMISSED.

An appropriate Order will accompany this Memorandum Opinion.

Date: 11 May 2021
Richmond, Virginia

/s/
John A. Gibney, Jr.
United States District Judge